UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAFET P.A.,

        Petitioner,

        v.

CHRISTOPHER CHESTNUT et. al,

        Respondents.

No. 1:26-cv-00799-TLN-JDP

**ORDER**

     This matter is before the Court on Petitioner Jafet A.'s ("Petitioner") Petition for Writ of Habeas Corpus.  (ECF No. 1.)  For the reasons set forth below, the Court GRANTS Petitioner's Petition.

///

///

///

///

///

///

///

///

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 1.) Petitioner entered the United States with his family on November 1, 2023, in Eagle Pass, Texas. (ECF No. 6 at 4.) Petitioner was placed into immigration proceedings on or about November 3, 2023. (*Id*.) At an undisclosed point, Petitioner was released into the United States where he cooperated with U.S. Immigration and Customs Enforcement ("ICE") reporting requirements in the two years prior to his recent detention. (*See id*.) On November 4, 2025, Petitioner was detained when he appeared for a required ICE check-in appointment. (*Id*.) At the time of filing his motion for temporary restraining order ("TRO"), Petitioner had been detained for over 90 days. (*Id*.)

On February 1, 2026, Petitioner filed a Writ of Habeas Corpus, challenging the lawfulness of his civil detention. (*See id*.) On February 2, 2026, this Court granted Petitioner's motion for TRO and ordered Respondents to show cause why the Petition should not be granted. (ECF No. 8.) On February 9, 2026, Respondents filed a response to the order to show cause. (ECF No. 12.) On February 12, 2026, Petitioner filed a reply. (ECF No. 13.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

///

2

**III.    ANALYSIS**

In his Petition for Writ of Habeas Corpus, Petitioner claims he is being unlawfully subjected to mandatory detention in violation of due process.[1]  (*See* ECF No. 1.)  In response, Respondents contend Petitioner is an "applicant for admission" who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (ECF No. 12 at 2.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.    <u>Liberty Interest</u>

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a

---

[1]    Petitioner also asserts a claim for violation of the Immigration and Nationality Act ("INA").  (ECF No. 1 at 5.)  The Court finds it need not address Petitioner's additional claim to rule on the Petition, as this claim seeks the same relief Petitioner seeks in his due process claim.

noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court finds Petitioner gained a liberty interest when he was released into the United States in November 2023. (ECF No. 6 at 4.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Further, the Due Process Clause "applies to noncitizens in this country in connection with removal proceedings even if their presence is unlawful or temporary." *Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025).

The Court does not find persuasive Respondents' argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) because he is an "applicant for admission." (ECF No. 12 at 1–2.) This Court has now ruled on this same issue countless times and courts throughout the Ninth Circuit have overwhelmingly rejected Respondents' legal position and found the government's re-classification of individuals under the mandatory detention policy unlawful. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS mandatory detention policy for a nationwide certified class).

As this Court has previously noted, it will not reconsider its position absent new argument, case law, or distinguishable facts. Respondents provide no such grounds for reconsideration. (*See* ECF No. 12.) Thus, Petitioner is not an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Petitioner is instead subject to 8 U.S.C. § 1226(a)

("§ 1226(a)") and entitled to the process that statute requires prior to re-detention, including a bond hearing at a minimum.  Accordingly, Petitioner has a protected liberty interest in his continued freedom protected by the Due Process Clause.

B.    Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Respondents violated Petitioner's due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  Petitioner has been released from ICE custody since November 3, 2023, and has cooperated with the conditions of his release by appearing for required reporting. (ECF No. 6 at 3–4.)  Petitioner asserts he has lost his liberty, has been separated from his wife and children, and is unable to work in support of his family while in detention.  (*Id*. at 6.)  Accordingly, these factors weigh in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez*, 2025 WL 3247258, at *4 (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Petitioner maintains that he has not been given any bond hearing.  (*See* ECF No. 6 at 5); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.")).  Thus, the Court finds Petitioner was likely erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural

5

safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).

Petitioner asserts Respondents face low or minimal hardship because they bear limited administrative costs associated with his release or the provision of a bond hearing. (ECF No. 6 at 7.) The Court agrees. The cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under 8 U.S.C. § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. Moreover, it would be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. (*See id.*); *see also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where Petitioner has substantially complied with the conditions of his release and there is no final order of removal — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous

deprivation of liberty.  Further, Respondents have not provided any substantive opposition to the contrary.  (*See* ECF No. 12.).

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted.  Respondents did not provide either.  Moreover, Respondents did not provide a post-deprivation opportunity to be heard.  The Court accordingly finds Respondents violated Petitioner's procedural due process rights.

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: March 4, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE